JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
SHIMMICK CONSTRUCTION COMPANY, INC.

## DEFENDANTS
RLI INSURANCE COMPANY, DOES 1 through 10

*E-filing*

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
George D. Yaron, Esq. / Henry M. Su, Esq.
YARON & ASSOCIATES
601 California Street, 21st Floor
San Francisco, CA  94108

Attorneys (If Known)
Donald W. Carlson, Esq. / Joyce C. Wang, Esq. / Nancy J. Strout, Esq.
CARLSON, CALLADINE & PETERSON LLP
353 Sacramento Street, 16th Floor
San Francisco, CA  94111

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | ☐ 900Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities — | ☐ 540 Mandamus & Other | **IMMIGRATION** | 26 USC 7609 | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities — | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Section 1332, Section 1441 and Section 1446

Brief description of cause:
Alleged Breach of Contract and Alleged Brech of the Implied Covenant of Good Faith and Fair Dealing

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND          ☐ SAN JOSE

DATE
April 28, 2008

SIGNATURE OF ATTORNEY OF RECORD
*C Wang*

DONALD W. CARLSON [Bar No. 79258]
JOYCE C. WANG [Bar No.: 121139]
NANCY J. STROUT [Bar No.: 121096]
CARLSON, CALLADINE & PETERSON LLP
353 Sacramento Street, 16th Floor
San Francisco, California 94111
Telephone:    (415) 391-3911
Facsimile:    (415) 391-3898

ORIGINAL FILED

APR 29 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

Attorneys for Defendant
RLI INSURANCE COMPANY

EMC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHIMMICK CONSTRUCTION COMPANY,
INC., a corporation,

        Plaintiff,

  vs.

RLI INSURANCE COMPANY, a
corporation, and DOES 1 through 100,

        Defendants.

CV CASE No. 08 ____ 2214

**DEFENDANT RLI'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**[28 U.S.C. §§ 1332, 1441, 1446]**

Action Filed:  March 24, 2008

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND THE PLAINTIFF AND ITS ATTORNEYS OF RECORD HEREIN:**

    PLEASE TAKE NOTICE that Defendant RLI INSURANCE COMPANY ("RLI") hereby removes to the United States District Court for the Northern District of California, the action described below presently pending in the Superior Court of the State of California, in and for the County of Alameda.

    This removal is made pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 and pursuant to the procedures set forth in 28 U.S.C. § 1446.  The grounds for removal of this state court action to federal court are provided below.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET,
SUITE 1600
San Francisco, CA  94111

151865v1

NOTICE OF REMOVAL

CASE NO.: ____

1  |  CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET,
SUITE 1600
San Francisco, CA  94111

JURISDICTION

1.   This Court has original jurisdiction over this civil action, and this action is appropriate for removal pursuant to 28 U.S.C. §§ 1332 and 1441, as both parties are citizens of different states and the matter in controversy far exceeds the jurisdictional minimum of $75,000, exclusive of interest and costs, as detailed below.

BASIS FOR REMOVAL

2.   On March 24, 2008, Plaintiff Shimmick Construction Company, Inc. ("Plaintiff") filed an action in the Superior Court of California, Alameda County entitled, *SHIMMICK CONSTRUCTION COMPANY, INC. v. RLI INSURANCE COMPANY and DOES 1 through 100*, Case No. RGO8378312 (hereinafter "the State Action"), a true and correct copy of which Complaint is attached hereto in its entirety as **Exhibit A**.

3.   The Complaint alleges that Plaintiff is "a California corporation duly organized and existing under the laws of the State of California with its principal place of business in Hayward, California." (Complaint ¶ 1).

4.   The Complaint alleges that Defendant RLI Insurance Company is "an Illinois corporation . . . with its principal place of business in Peoria, Illinois."  (Complaint ¶ 2). Defendant is and at all relevant times has, in fact, been organized under the laws of the state of Illinois, with its principal place of business in Peoria, Illinois.

5.   The Complaint seeks damages "in an amount to be proven at trial in excess of $2,977,301." (Complaint ¶¶ 17 & 21).  The amount in controversy is therefore in excess of the jurisdictional minimum of $75,000 set forth in 28 U.S.C. § 1332.

6.   Service of the Complaint was effective on April 14, 2008, pursuant to California Code of Civil Procedure §415.30.  A true and correct copy of the executed Acknowledgment of Receipt of Summons is attached hereto as **Exhibit B**.  Thus, this Notice of Removal is timely, the procedures set forth in 28 U.S.C. § 1446 have been met, and removal is thus effected.

7.   On April 25, 2008, Defendant caused Plaintiff to be served with Defendant's Answer to the Complaint, which was also filed in the Superior Court of the State of California, in

151865v1

2

**NOTICE OF REMOVAL**

CASE NO.: _____

1   and for the County of Alameda on April 25, 2008. A true and correct copy of the state-court

2   endorsed Answer is attached hereto as **Exhibit C**.

3     WHEREFORE, Defendant RLI Insurance Company hereby removes the State Action

4   described herein to the United States District Court for the Northern District of California, for all

5   purposes, with a copy of the Notice of Removal to be filed in the Superior Court of the State of

6   California, County of Alameda, and served upon Plaintiff.

7     WHEREFORE, as noted in the caption of this document, Defendant respectfully demands

8   a jury trial in this action.

9

10  DATED: April 28, 2008      CARLSON, CALLADINE & PETERSON LLP

11

12

13            By   _Mang_

14             JOYCE C. WANG
           Attorneys for Defendant
15            RLI INSURANCE COMPANY

16

17

18

19

20

21

22

23

24

25

26

27

28

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET,
SUITE 1600
San Francisco, CA 94111

**PROOF OF SERVICE BY MAIL**
(Code of Civil Procedure §§ 1013a(3) & 2015.5)

I, the undersigned, declare that I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is CARLSON, CALLADINE & PETERSON LLP, 353 Sacramento Street, 16th Floor, San Francisco, California 94111.

On April 29, 2008, I served the attached:

**DEFENDANT RLI'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**
**NOTICE OF INTERESTED PARTIES**
**DEMAND FOR JURY TRIAL**

on the person(s) named below in said cause, by placing a true copy thereof enclosed in an envelope with postage prepaid fully thereon. Said envelope(s) were thereafter deposited with the United States Postal Service at San Francisco, California, in accordance with this firm's business practice for collection and processing correspondence for mailing, with which I am personally and readily familiar. All correspondence is deposited with the United States Postal Service on the same day in the ordinary course of business. Said envelope(s) were addressed as follows:

George D. Yaron, Esq.
Henry Su, Esq.
Yaron & Associates
601 California Street, Floor 21
San Francisco, CA 94108-2826

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at San Francisco, California, on April 29, 2008.

_Margie Jones_
Margie Jones

**NOTICE OF REMOVAL**

CASE NO.: _____

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET, SUITE 1600
San Francisco, CA 94111

**EXHIBIT A**

*6513480*

FILED ALAMEDA COUNTY

MAR 24 2008

CLERK OF SUPERIOR COURT
BY ⎯⎯⎯⎯⎯⎯⎯
DEPUTY

1 GEORGE D. YARON (State Bar #96246)
  HENRY M. SU (State Bar #171853)
2 KIMBERLY A. JENSEN (State Bar #253311)
  **YARON & ASSOCIATES**
3 601 California Street, 21st Floor
  San Francisco, California 94108
4 Telephone: (415) 658-2929
  Facsimile: (415) 658-2930
5 Email: gyaron@yaronlaw.com

6 Attorneys for Plaintiff
  SHIMMICK CONSTRUCTION COMPANY, INC.
7

8               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF ALAMEDA

10

11 SHIMMICK CONSTRUCTION COMPANY,)  CASE NO.: **RG08378315**
   INC., a corporation,                      )
12                                            )
                 Plaintiff,                   )  **COMPLAINT FOR:**
13                                            )
        v.                                    )  **(1)  BREACH   OF  CONTRACT;**
14                                            )  **      AND**
   RLI INSURANCE COMPANY, a corporation,)  **(2)  BREACH OF THE IMPLIED**
15 and DOES 1 through 100,                    )  **      COVENANT    OF   GOOD**
                                              )  **      FAITH AND FAIR DEALING**
16                 Defendants.                )
                                              )
17                                            )

18        Plaintiff SHIMMICK CONSTRUCTION COMPANY, INC., by way of this Complaint

19 against Defendant RLI INSURANCE COMPANY and DOES 1 through 100, hereby alleges as

20 follows:

21                              **PARTIES**

22        1.    Plaintiff SHIMMICK CONSTRUCTION COMPANY (hereinafter referred to as

23 "Plaintiff") is, and at all relevant times mentioned herein was, a California corporation, duly

24 organized and existing under the laws of the State of California, with its principal place of business

25 in Hayward, California, and qualified to do business in California.

26        2.    On information and belief, Plaintiff alleges that Defendant RLI INSURANCE

27 COMPANY (hereinafter referred to as "RLI"), an Illinois corporation, is now and at all relevant

28

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**COMPLAINT**

1   times mentioned herein has been doing business as an insurer under the laws of the State of

2   California, with its principal place of business in Peoria, Illinois.

3       3.      Defendants DOES 1 through 100 are persons, corporations, or other entities that are

4   doing business in the State of California. The true identities of DOES 1 through 100 are currently

5   unknown to Plaintiff, and Plaintiff therefore prays for leave to amend this Complaint to assert the

6   proper names of each such fictitiously named Defendant when its identity is discovered. Each of

7   DOES 1 through 100 issued one or more policies of insurance that name Plaintiff as an insured and

8   that provide or potentially provide coverage for all or a portion of the loss described below.

9       4.      Plaintiff is further informed and believes, and based thereupon alleges, that each

10   Defendant, including each fictitiously named Defendant, was the director, manager, officer,

11   managerial agent, employee, predecessor, related entity successor, joint-venturer, co-conspirator,

12   agent, alter ego, and/or representative of one or more of the other Defendants named herein,

13   including each fictitiously named Defendant, and/or acted with the permission, authorization, and/or

14   ratification and consent of such other Defendants and their officers, directors, and/or managerial

15   agents.

16                                **GENERAL ALLEGATIONS**

17       5.      Plaintiff was at all relevant times involved in the construction of a sanitary sewer pipe

18   at various locations within the County of Sacramento. As explained below, this is an insurance

19   coverage dispute arising out of Defendant RLI's failure to indemnify Plaintiff for loss and/or losses

20   incurred in the last week of December 2005 when said sewer pipe was damaged during construction

21   as a result of a heavy rainstorm.

22       6.      The policy at issue is a Builder's Risk Policy issued by RLI to Plaintiff (hereinafter

23   referred to as "the Policy"). It bears policy number RBR0021513 and was effective from May 6,

24   2005 to May 6, 2006. Plaintiff has paid all necessary premiums to obtain the Policy and has

25   performed each act required on its part to keep the Policy in full force and effect. A true and

26   accurate copy of the Policy is attached hereto and incorporated by reference as though fully alleged

27   herein as Exhibit "A."

28

1    7.    In Fall 2004, Plaintiff entered into a contract with the Sacramento Regional County

2    Sanitation District to install a 3-mile section of sewer pipe known as the Bradshaw Interceptor

3    Sewer, Section 6A (hereinafter referred to as the "Interceptor Project"). The Interceptor Project was

4    a portion of the larger Bradshaw/Folsom Interceptor pipeline, which was built to convey wastewater

5    flows from the northeast area of Sacramento County to the Sacramento Regional Wastewater

6    Treatment Plant near Elk Grove. The work called for by Plaintiff's contract included the furnishing

7    of all labor, materials, and equipment for the construction of a gravity sewer interceptor pipeline

8    from the Bradshaw Central Junction Structure.  The work consisted of installing approximately

9    15,208 linear feat of 108-inch diameter interceptor, constructing manholes, relocating utilities, and

10    providing future connections for sewer services. Per the contract, the work was to completed within

11    450 calendar days.

12    8.    Having entered into the above-described contract, Plaintiff requested that the

13    Interceptor Project be added to the RLI Policy.  In response to Plaintiff's request, on August 12,

14    2005, RLI issued Change Endorsement No. 3 to the Policy, which specifically provided flood and

15    other coverages for "The Bradshaw Interceptor sewer, Section 6A (BR6A)."

16    9.    A heavy rain storm occurred over the holiday weekend starting on December 24,

17    2005, during Plaintiff's construction of the Interceptor Project.  A subsequent rain storm occurred

18    during the weekend starting on December 31, 2005.  As a result of the storms, on December 24 to

19    31, 2005, water flooded the trench dug by Plaintiff and totally submerged the Interceptor causing

20    extensive damage to the project (hereinafter referred to as "the loss event").  The Policy states:

21    All "earthquake" shocks, "volcanic eruptions" or "floods" that occur
     within any 168-hour period will constitute a single "earthquake,"
22    "volcanic eruption" or "flood."  You may decide when the 168-hour
     period begins; however, we will only pay for "earthquake," "volcanic
23    eruption" or "flood" loss or damage that initiates during the policy
     period.  We will also pay for "earthquake," "volcanic eruption" or
24    "flood" loss or damage occurring after the expiration date of this
     policy if the loss or damage falls within the 168-hour period and
25    initiates during the policy period. (Emphasis added.)

26

27    The flood events on December 24 and 31, 2005, occurred within a 168-hour period.

28    Therefore, they constitute a single loss event. The flood severely interrupted Plaintiff's construction

1   of the Interceptor Project, causing Plaintiff to incur substantial additional sums in an amount to be

2   proven at trial to repair the damage and bring the installation back on schedule.

3       10.    On January 18, 2006, Plaintiff, directly or by and through its agent, placed RLI on

4   notice of the loss, acting in full compliance with the Policy's premium and reporting requirements.

5   RLI acknowledged receipt of the claim on January 31, 2006.

6       11.    On April 11, 2006, Plaintiff provided RLI with its initial proof of loss. On November

7   21, 2006, Plaintiff provided RLI with an Amended Proof of Loss in the amount of $2,977,301.

8       12.    By letter, dated November 21, 2007, RLI denied coverage entirely for the loss. This

9   declination of coverage was wrongful and without merit. Plaintiff is informed and believes that the

10  loss or losses are covered under the following coverages, including but not limited to:

11          (a)    Coverage for "The Bradshaw Interceptor sewer, Section 6A (BR6A)," as

12                 provided under Change Endorsement No. 3, which part of Exhibit "A";

13          (b)    Flood Coverage, as provided under policy form MAN-CNS-3045 (11/05),

14                 which part of Exhibit "A";

15          (c)    Builder's Risk Policy, as provided under policy form RBR 121 (09/02),

16                 which part of Exhibit "A";

17          (d)    Builder's Risk Loss of Income Coverage, as provided under policy form RBR

18                 302 (09/02), which part of Exhibit "A"; and

19          (e)    Soft Costs/Extra Expense Endorsement, as provided under policy form RBR

20                 316 (09/02), which part of Exhibit "A."

21  Furthermore, the loss or losses sustained by Plaintiff were caused by a "covered cause of loss" as

22  provided under the Policy. Despite the plain and clear application of these provisions, RLI has not

23  provided any reasonable justification for its complete and total declination of coverage for any sums

24  at all.

25                          **FIRST CAUSE OF ACTION**

26                    **(Breach of Contract Against All Defendants)**

27      13.    Plaintiff hereby repeats and incorporates by reference paragraphs 1 through 12 as

28  though fully set forth herein.

1       14.     The Policy issued by RLI to Plaintiff constitutes a valid contract between the parties

2  that was in full force and effect at all relevant times.

3       15.     Plaintiff has duly performed each and every covenant and/or condition as required

4  by the Policy.

5       16.     The Policy provides coverage for the cause of the loss, and RLI has a duty to

6  indemnify Plaintiff for the loss under the Policy.  RLI has improperly declined to indemnify Plaintiff

7  for this loss.  RLI's failure to perform constitutes a breach of the terms and conditions of the Policy.

8       17.     As a direct and proximate result of RLI's wrongful conduct as herein alleged, Plaintiff

9  has been damaged in an amount to be proven at trial in excess of $2,977,301.

10                      **SECOND CAUSE OF ACTION**

11         **(Breach of the Implied Covenant of Good Faith and Fair Dealing**

12                    **Against All Defendants)**

13       18.     Plaintiff hereby repeats and incorporates by reference paragraphs 1 through 12 as

14  though fully set forth herein.

15       19.     The Policy contains an implied covenant of good faith and fair dealing, which

16  provides that neither party shall do anything to prevent the other from receiving the benefits of the

17  contract and that each party must act in good faith and deal fairly with the other.

18       20.     RLI breached the implied covenant of good faith and fair dealing by unreasonably

19  refusing to indemnify Plaintiff.  RLI did so without a reasonable basis and with full knowledge

20  and/or reckless disregard for the consequences.  By refusing to indemnify Plaintiff for this covered

21  loss, RLI has engaged and continues to engage in a course of conduct to further its own economic

22  interests and in violation of its contractual obligations to Plaintiff.

23       21.     As a direct and proximate result of RLI's wrongful conduct as herein alleged, Plaintiff

24  has been damaged in an amount to be proven at trial in excess of $2,977,301.

25       22.     As a further direct and proximate result of said breach, Plaintiff has also been required

26  to retain legal counsel to recover the benefits owed to it under the Policy.  Plaintiff is therefore

27  entitled to recover costs and reasonable attorneys' fees.

28

G:\2987\Pleadings\Complaint.2.wpd

23.    In committing the acts described herein, RLI acted in conscious disregard of Plaintiff's rights and is guilty of malice and oppression in refusing to indemnify Plaintiff without a reasonable basis in law or fact.  RLI ratified, authorized, and approved of all actions and conduct by its employees and agents.  RLI's conduct thus also warrants an assessment of punitive or exemplary damages in an amount appropriate to punish RLI and deter others from engaging in similar wrongful conduct.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

<strong>On the First Cause of Action</strong>

1.    For compensatory damages according to proof;

<strong>On the Second Cause of Action</strong>

2.    For compensatory damages according to proof;

3.    For attorneys' fees incurred in obtaining the benefits owed under the Policy according to proof;

4.    For punitive or exemplary damages in an amount appropriate to punish RLI and deter others from engaging in similar wrongful conduct;

<strong>On All Causes of Action</strong>

5.    For costs of suit herein;

6.    For interest on this sum at the prevailing legal rate from the date first incurred until paid; and

7.    For all such other relief as the Court may deem just and proper.

DATED: March 20, 2008                    YARON & ASSOCIATES

                                         By: _____
                                         GEORGE D. YARON, ESQ.,
                                         Yaron & Associates
                                         Attorneys for Plaintiffs SHIMMICK
                                         CONSTRUCTION COMPANY

# EXHIBIT A



**RLI Insurance Company**
Peoria, Illinois

# BUILDER'S RISK DECLARATIONS PAGE

### REPORTING FORM

**POLICY NO.** RBR0021513

| NAMED INSURED AND MAILING ADDRESS: | AGENT/BROKER AND MAILING ADDRESS: |
|---|---|
| Shimmick Construction Company, Inc. | 31939    Woodruff-Sawyer & Company |
| 24200 Clawiter Road | 220 Bush Street, 7th Floor |
| Hayward, CA 94545 | San Francisco, CA 94104 |

**POLICY PERIOD:** From. 05/06/2005 to 05/06/2006  at 12:01 A.M. Standard Time at your mailing address shown above.

**LIMITS OF INSURANCE:**

**Per Occurrence Loss Limit**

At no time will we pay more than $25,000,000          for a loss due to a single occurrence or event. All sub-limits are a part of, and not in addition to, this Per Occurrence Loss Limit. If an amount is shown below, the following sub-limits apply on a per occurrence basis:

| | | |
|---|---|---|
| Lesser of  10  % of loss or $ 25,000 | | Claim Preparation Expenses |
| $100,000 | | Contract Penalty |
| $500,000 | | Covered Property at temporary locations |
| $500,000 | | Covered Property In transit |
| $1,000,000 | | Debris Removal |
| $10,000 | | Fire Department Service Charge |
| $100,000 | | Ordinance or Law |
| $10,000 | | Pollutant Cleanup and Removal |
| $10,000 | | Service Interruption |
| $100,000 | | Temporary Structures |
| $500 | Per Item, $25,000 | Trees; Shrubs, Plants and Lawns |
| $25,000 | | Valuable Papers and Records |

**Limits Subject to an Annual Aggregate**

| Per Occurrence | Annual Aggregate | |
|---|---|---|
| $SEE ENDORSEMENTS | $SEE ENDORSEMENTS | "Earthquake" |
| $SEE MAN-CNS-3045 | $ SEE MAN-CNS-3045 | "Flood" |
| $25,000,000 | $25,000,000 | "Named Storm," or "Hurricane" and "Resultant Atmospheric Disturbance" |

If endorsed to this policy, and an amount is shown, the following sub-limits apply:

| | |
|---|---|
| Lesser of  N/A % of loss or $ 500,000 | Extra Expense |
| $500,000 | Soft Costs |

**DEDUCTIBLE**

| | |
|---|---|
| $25,000 | All Other Peril Deductible |
| $25,000 | Theft |
| 3  days | Soft Costs |
| 72  hours | Extra Expense |
| N/A %, subject to a minimum of $25,000 | "Named Storm," or "Hurricane" and "Resultant Atmospheric Disturbance" |
| N/A %, subject to a minimum of $ SEE ENDORSEMENTS | "Earthquake" |
| N/A %, subject to a minimum of $ SEE MAN-CNS-107 | "Flood" |

**FORMS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:** See CPR 2150.

Inspection Fee  $
**Total Premium $Nil**                    Minimum Premium $Nil                    Deposit Premium $Nil

*Jeffrey S. Wofen*

C 10/31/2005

Authorized Signature

RBR 120R (09/02)                                                                          Page 1 of 1

Producer

Policy Number: RBR0021513

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPLICABLE FORMS & ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.

| | |
|---|---|
| CPR-110A(02/03) | Supplemental Declarations |
| CPR-2147(02/04) | Declarations - Sub-Limit Addendum |
| CPR-2187(10/01) | Exclusion of Certain Computer Related Losses - "A" |
| CPR-2230(05/03) | Terrorism Exclusion |
| ILF-0001(01/01) | Signature Page |
| MAN-CNS-3030(11/05) | Builder's Risk Value Reporting Endorsement |
| MAN-CNS-3043(11/05) | Expedited Expenses Coverage |
| MAN-CNS-3044(11/05) | Named Storm Exclusion |
| MAN-CNS-3045(11/05) | Flood Coverage |
| RBR-120R(09/02) | Builder's Risk Declarations Page Reporting Form |
| RBR-121(09/02) | Builder's Risk Policy |
| RBR-302(09/02) | Builder's Risk Loss Of Inome Coverage |
| RBR-306(09/02) | California Municipal Projects Endorsement |
| RBR-316(09/02) | Soft Costs/Extra Expense Endorsement |
| RBR-325(09/02) | Earthquake Exclusion |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2150 (10/01)

Broker

Page 1 of 1

**RLI Insurance Company**
9025 North Lindbergh Drive, Peoria, IL 61615

## SUPPLEMENTAL DECLARATIONS

Policy No:  RBR0021513

Named Insured and Mailing Address

Shimmick Construction Company, Inc.
24200 Clawiter Road
Hayward, CA 94545

If coverage for Certified Acts of Terrorism, as defined in the Terrorism Risk Insurance Act of 2002, is provided under the terms of your insurance policy, losses caused by acts of terrorism is partially reimbursed by the United States under a formula whereby the United States pays 90% of covered terrorism losses exceeding a prescribed deductible to the insurance company providing for the coverage.

Portion of premium attributable to coverage for Certified Acts of Terrorism                      $ Not Covered

Portion of premium attributable to coverage for Certified Acts of Terrorism
(fire only),  as required by law                                                                                                    $ 1,308.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

CPR 110A (02/03)

Broker

Policy Number: RBR0021513                                          RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DECLARATIONS - SUB-LIMIT ADDENDUM

The total Limit of Liability as shown in the Declarations is subject to the following sub-limit(s). The sub-limit(s) shown is a limit or amount per occurrence, except for Earthquake and Flood where an annual aggregate applies. The sub-limit(s) shown are included in and do not increase the Limit of Liability shown in the Declarations. We will not, in any case, exceed this sub-limit(s) in one disaster, casualty or event, no matter how many locations are involved.

| Coverage Part or Item: | Sub-Limit |
|---|---|
| Projects Consisting of Wood Frame Construction | $2,500,000 |

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

CPR 2147 (02/04)                                                          Page 1 of 1

Policy Number: RBR0021513                                          RLI Insurance Company

# EXCLUSION OF CERTAIN COMPUTER RELATED LOSSES – "A"

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED. PLEASE READ IT CAREFULLY.

A. We will not pay for loss or damage, whether direct or indirect, to "electronic data processing equipment":

1. Arising from "computer virus" and/or "computer hacking";

2. Caused by the transfer or delivery of covered property from a covered location or your computer to a person or place outside of a covered location on the basis of unauthorized or fraudulent instructions, including but not limited to instructions transmitted by a computer, whether or not owned by you, or via any telecommunications transmission method;

3. Arising from costs to research, replace or restore the information contained on electronic or magnetic media;

4. Arising from electrical disturbance including electrical or magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings;

5. Arising from power supply disturbance including interruption of power supply, power surge, blackout, or brownout;

6. During the period when your business is interrupted as a result of loss to your Web Site operation whether or not maintained or operated by you and whether or not located at the described premises;

7. Arising from the failure, malfunction or inadequacy of:

    a. Such "electronic data processing equipment" whether belonging to you or to others;

    b. Any products, and any services, data or functions that directly or indirectly use or rely on, in any manner, such "electronic data processing equipment" due to the inability to correctly recognize, process, distinguish, interpret, or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000; and/or

8. Arising from any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in this endorsement.

   Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

B. However, if direct physical loss or damage not otherwise excluded by this policy results, then subject to all of its terms and conditions, we will only pay for the resulting direct physical loss or damage.

C. Claims for resulting physical loss or damage at multiple locations will constitute a separate occurrence at each location.

D. DEFINITIONS

1. "Computer virus" means the introduction into a computer of any self-replicating electronic data processing code or other code that is intended to:

    a. Result in the deletion, destruction, generation, or modification of data;

b. Alter, contaminate, corrupt, degrade, or destroy the integrity, quality, or performance of data;

c. Damage, destroy, or cause malfunction, inadequacy, degradation, or corruption of any hardware or processing, recording, or storage media used with hardware; or

d. Deny access to or services from your computer, your computer network or web site.

2. "Computer hacking" means an unauthorized intrusion by an individual or group of individuals, whether employed by you or not, into a computer or computer network that can:

a. Result in the deletion, destruction, generation, or modification of data;

b. Alter, contaminate, corrupt, degrade, or destroy the integrity, quality, or performance of data;

c. Result in the scanning or copying of data;

d. Cause damage, destruction, inadequacy, malfunction, degradation, or corruption of any hardware or processing, recording, or storage media used with hardware; or

e. Result in the denial of access to or denial of services from your computer, your computer network, or web site.

3. "Electronic data processing equipment" includes the following items:

a. Computer hardware, including microprocessors;

b. Computer application software;

c. Computer operating systems and related software;

d. Computer networks;

e. Microprocessors (computer chips) not part of any computer system;

f. Any other computerized or electronic equipment or components; or

g. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in items a. through f. above. This includes any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential problems with items listed in a. through f. above.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: RBR0021513                                          RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TERRORISM EXCLUSION

1.  We will not pay for loss, damage, cost or expense caused directly or indirectly by "terrorism" or any action taken to control, prevent, or suppress terrorism. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to this loss.

    "Terrorism" for purposes of this exclusion means:

    A.  The disruption or threatened disruption of financial, governmental, transportation, communication, computer or utility services which appears to be for political, religious, economic, cultural, ethnic, ecological or racial ends;

    B.  The use or threatened use of force, violence or criminal conduct which appears to be for political, religious, economic, cultural, ethnic, ecological or racial ends;

    C.  The use or threatened use of force, violence or criminal conduct for the apparent purpose of or with the result of harming or intimidating a civilian population;

    D.  The use or threatened use of biological, chemical or nuclear substances for the apparent purpose of or with the result of harming or intimidating a civilian population;

    E.  Any act or threatened act of force, violence or criminal conduct by any person or persons acting on behalf of or in connection with any organization with a stated goal of overthrowing or influencing the policy of any government, whether lawful or otherwise; and/or

    F.  Any act or threatened act of force, violence or criminal conduct that has been labeled, identified or described as a terrorist act by the executive branch of the United States government.

2.  Fire Exception

    The following provision applies only where relevant state law requires coverage for fire losses resulting from acts of terrorism, and where a premium for such has been paid.

    If an act of terrorism results in fire, we will pay for the loss or damage caused by that fire. This exception for fire applies only to direct loss or damage by fire to covered property. This exception does not apply to coverage for loss of earnings, extra expense, or fire legal liability.

3.  Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this policy provide coverage for any loss that would otherwise be excluded by this policy under:

    A.  Exclusions that address war, military action, or nuclear hazard; or

    B.  Any other exclusion.

4.  The absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this policy under:

    A.  Exclusions that address war, military action, or nuclear hazard; or

    B.  Any other exclusion.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2230 (05/03)                                                          Page 1 of 1

Broker

Policy Number: RBR0021513

RLI Insurance Company

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Camille J. Hensey*

Vice President & Corporate Secretary

*MJ Stone*

President & COO

ILF 0001 (01/01)

Broker



Policy Number: RBR0021513                                    RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BUILDER'S RISK VALUE REPORTING ENDORSEMENT

### SCHEDULE

| Construction Type | Annual Rate (Per $100) | Premium Base |
|---|---|---|
| [ X ] Wood Frame | Referral to RLI | Referral to RLI |
| [ X ] Joisted Masonry | Referral to RLI | Referral to RLI |
| [ X ] Other | Referral to RLI | Referral to RLI |
| [ X ] Roads, bridges, pipelines, utilities, water and wastewater treatment work, rail work | $0.06 | Contract Value |

| Catastrophe Surcharge | Annual Rate (Per $100) | Premium Base |
|---|---|---|
| [ X ] Earthquake - 7105 | $0.07 | Contract Value |
| [ X ] Earthquake - Non 7105 | Referral to RLI | Referral to RLI |
| [ X ] Flood – Zones "A" or "V" or in a 100 year flood plain | $0.10 | Contract Value |
| [ X ] Flood – Non Zones "A" or "V" or in a 100 year flood plain | $0.01 | Contract Value |

The Insured has an option to purchase Soft Costs, Extra Expense and/or Business Income and Rental Income at 1.5 times the above rates (Construction Type rate plus any loading or surcharge). Values must be declared on the monthly reports & premium paid thereon.

## REPORTING

Projects are to be reported within 30 days of commencement and must include full details on each project. There is no coverage for projects that are not reported.

The premium designated in the Declarations includes a minimum and deposit premium. We will calculate the premium based upon the values reported and we will apply the computed premium to the deposit premium until it is exhausted. Additional premium will then be due as each project is reported to us. The premium is computed using the indicated rate shown in the Schedule.

Each project report must state:
- The replacement cost value of all Covered Property wherever located, including the cost of reasonable labor and overhead;
- The complete address of the Covered Property; and
- The construction (walls, floors and roof) of the Covered Property.
- Intended occupancy

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

MAN-CNS-3030(11/05)                                              Page 1 of 2
                              Broker

Policy Number: RBR0021513                                         RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

We will not pay more than the Limit of Insurance stated on the Builder's Risk Declarations and/or the per occurrence loss limit, whichever is less, even if the values reported exceed that limit.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: RBR0021513                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXPEDITED EXPENSES COVERAGE

We will pay the reasonable extra cost to make temporary repairs, expedite permanent repairs, and expedite permanent replacement to Covered Property damaged by a Covered Cause of Loss. The most we will pay under this Additional Coverage is $500,000. for the sum of all covered expenses arising out of Covered Causes of Loss.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

MAN-CNS-3043(11/05)                                          Page 1 of 1

Policy Number: RBR0021513                                          RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED STORM OR HURRICANE AND
# RESULTANT ATMOSPHERIC DISTURBANCE EXCLUSION

Named Storm or Hurricane and Resultant Atmospheric Disturbance is not covered under this policy

~~A. In the states of Florida and Hawaii; and/or~~

B. In the following counties, parishes, or other jurisdictions as listed below:
  - **Alabama Counties** - Baldwin, Mobile
  - **Connecticut Counties** - Fairfield, Middlesex, New Haven, New London
  - **Delaware Counties** - Kent, Sussex
  - **Georgia Counties** - Bryan, Camden, Chatham, Glynn, Liberty, McIntosh
  - **Louisiana Parishes** - Ascension, Assumption, Cameron, East Baton Rouge, Iberia, Iberville, Jefferson, LaFourche, LaFayette, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebone, Vermillion, West Baton Rouge
  - **Maine Counties** - Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, York
  - **Maryland Counties** - Calvert, Dorchester, Somerset, St Mary's, Wicomico, Worchester
  - **Massachusetts Counties** - Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk
  - **Mississippi Counties** - Hancock, Harrison, Jackson
  - **New Hampshire Counties** - Rockingham
  - **New Jersey Counties** - Atlantic, Burlington, Cape May, Cumberland, Middlesex, Monmouth, Ocean
  - **New York Counties** - Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk, Westchester
  - **North Carolina Counties** - Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington
  - **Rhode Island Counties** - Newport, Washington
  - **South Carolina Counties** - Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper
  - **Texas Counties** - Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy
  - **Virginia Counties/Cities** - Accomack, Chesapeake, Gloucester, Hampton City, Isle of Wright, Lancaster, Mathews, Middlesex, Newport News, Norfolk City, Northampton, Northumberland, Portsmouth City, Poquoson City, Suffolk City, Virginia Beach, Westmoreland, Williamsburg, York

(Note - Certain cities are shown in lieu of counties)

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

MAN-CNS-3044(11/05)                                                Page 1 of 1
                              Broker



Policy Number: RBR0021513                                      RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE

Property not situated in a Flood Zone prefixed "A" or "V" and/or any 100 Year Flood Plain Area
as designated by the Federal Emergency Management Agency is subject to the following:

a.) We will not pay more than $3,000,000 at any one location for loss or damage caused by
"flood." In addition, we will not pay more than $3,000,000 in any one "flood" loss or disaster,
or $3,000,000 in any single one-year period or policy period, whichever is less

b.) 5 % of the total value at risk at the time of loss will be deducted from each adjusted
"flood" claim. $100,000 will be the minimum amount deducted.

c.) Coverage under this endorsement only applies to the following specific areas: Reported
Covered Locations.


Item p. under **F. EXCLUSIONS**, is deleted. Property situated in a Flood Zone prefixed "A" or "V" and/or
any 100 Year Flood Plain Area as designated by the Federal Emergency Management Agency is subject
to the following:

a.) We will not pay more than $1,000,000 at any one location for loss or damage caused by
"flood." In addition, we will not pay more than $1,000,000 in any one "flood" loss or disaster,
or $1,000,000 in any single one-year period or policy period, whichever is less

b.) ___ % of the total value at risk at the time of loss will be deducted from each adjusted
"flood" claim. $500,000 will be the minimum amount deducted.

c.) Coverage under this endorsement only applies to the following specific areas: Reported
Covered Locations.


**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**



### RLI Insurance Company
Peoria, Illinois

# BUILDER'S RISK DECLARATIONS PAGE

### REPORTING FORM

POLICY NO. RBR0021513

**NAMED INSURED AND MAILING ADDRESS:**
Shimmick Construction Company, Inc.
24200 Clawiter Road
Hayward, CA 94545

**AGENT/BROKER AND MAILING ADDRESS:**
31939    Woodruff-Sawyer & Company
220 Bush Street, 7th Floor
San Francisco, CA 94104

**POLICY PERIOD:** From  05/06/2005  to  05/06/2006  at 12:01 A.M. Standard Time at your mailing address shown above.

**LIMITS OF INSURANCE:**
Per Occurrence Loss Limit
At no time will we pay more than $25,000,000        for a loss due to a single occurrence or event. All sub-limits are a part of, and not in addition to, this Per Occurrence Loss Limit. If an amount is shown below, the following sub-limits apply on a per occurrence basis:

| | |
|---|---|
| Lesser of  10  % of loss or $ 25,000 | Claim Preparation Expenses |
| $100,000 | Contract Penalty |
| $500,000 | Covered Property at temporary locations |
| $500,000 | Covered Property in transit |
| $1,000,000 | Debris Removal |
| $10,000 | Fire Department Service Charge |
| $100,000 | Ordinance or Law |
| $10,000 | Pollutant Cleanup and Removal |
| $10,000 | Service Interruption |
| $100,000 | Temporary Structures |
| $500              Per Item, $25,000 | Trees, Shrubs, Plants and Lawns |
| $25,000 | Valuable Papers and Records |

Limits Subject to an Annual Aggregate

| Per Occurrence | Annual Aggregate | |
|---|---|---|
| $SEE ENDORSEMENTS | $SEE ENDORSEMENTS | "Earthquake" |
| $SEE MAN-CNS-3045 | $SEE MAN-CNS-3045 | "Flood" |
| $25,000,000 | $25,000,000 | "Named Storm," or "Hurricane" and "Resultant Atmospheric Disturbance" |

If endorsed to this policy, and an amount is shown, the following sub-limits apply:

| | |
|---|---|
| Lesser of  N/A % of loss or $ 500,000 | Extra Expense |
| $500,000 | Soft Costs |

**DEDUCTIBLE**

| | |
|---|---|
| $25,000 | All Other Peril Deductible |
| $25,000 | Theft |
| 3  days | Soft Costs |
| 72  hours | Extra Expense |
| N/A %, subject to a minimum of $25,000 | "Named Storm," or "Hurricane" and "Resultant Atmospheric Disturbance" |
| N/A %, subject to a minimum of $ SEE ENDORSEMENTS | "Earthquake" |
| N/A %, subject to a minimum of $ SEE MAN-CNS-107 | "Flood" |

**FORMS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:** See CPR 2150.

Inspection Fee $
**Total Premium $Nil**                    Minimum Premium $Nil                    Deposit Premium $Nil

*Jeffrey S. Wofen*

SC  10/31/2005                                                                     Authorized Signature

RBR 120R (09/02)                                                                   Page 1 of 1

Broker

RLI Insurance Company • Peoria, Illinois 61615

# BUILDER'S RISK POLICY

We will pay for direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss.

In return for your payment of the required premium, we provide the coverage described herein at the locations named in the Declarations and/or the endorsed Schedule of Locations, subject to all the "terms" of this policy. This includes the Declarations, as well as any endorsements and schedules attached to and made a part of this policy.

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks.

## A. WHO IS AN INSURED

The Named Insured shown in the Declarations, hereafter referred to as "you" or "your," as well as all affiliated, subsidiary and associated companies, and/or corporations now owned by the Named Insured, are insureds under this policy. In addition, if involved in the project shown in the Declarations, subcontractors are also insureds, but only with respect to the job site insured and the operations necessary and incidental to that job site. Architects and engineers are not insureds under this policy unless specifically endorsed.

## B. COVERAGE

1. Covered Property includes:

   a. If included in the "intended contract price" and will or has become a permanent part of the project described in the Declarations:

      (1) Materials, supplies, machinery, fixtures and equipment;

      (2) Excavations, grading or filling; and/or

      (3) Underground flues, pipes, drains, piers or pilings;

   b. Scaffolding, construction forms and temporary structures if a Limit of Insurance is shown in the Declarations.

   This property may be your property or property of others in your care, custody or control.

2. Coverage applies within the United States of America, the District of Columbia and Canada:

   a. At the project site shown in the Declarations;

   b. Temporarily at a location other than the project site described in the Declarations; and/or

   c. In transit;

   But scaffolding, construction forms and temporary structures are only covered while at the project site shown in the Declarations.

3. Coverage begins on the date specified in the Declarations, and ends when one of the following first occurs:

   a. Your interest in the Covered Property ceases;

RBR 121 (09/02)

Broker

b.  The building or structure described in the Declarations is accepted by the purchaser;

c.  You abandon the building or structure with no intention to complete it;

d.  The building or structure is:

   (1)  Put to its intended use; or

   (2)  Leased or rented to others; unless we specify otherwise in writing;

e.  The building or structure described in the Declarations has been completed for more than 90 days; or

f.  The date specified in the Declarations.

## C. LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations are limits or amounts per occurrence, except for "earthquake" and "flood" where an annual aggregate applies. We will not, in any case, pay more than these limits or amounts in one disaster, casualty, or event, no matter how many locations are involved.

2.  This policy is subject to a Per Occurrence Loss Limit. At no time will we pay more than the specified dollar amount for a loss due to a single occurrence or event.

3.  The most we will pay for loss in any one occurrence for coverages with sublimits is the amount specifically stated for that coverage in the Declarations. These amounts are part of, and not in addition to, the Per Occurrence Loss Limit.

4.  If this policy includes both property damage and business interruption, the amounts stated in the Declarations under Per Occurrence Loss Limit will be the maximum amounts collectible under this policy for loss or damage resulting from the perils described regardless of whether the loss involves property damage alone or both property damage and business interruption.

5.  All "earthquake" shocks, "volcanic eruptions" or "floods" that occur within any 168-hour period will constitute a single "earthquake," "volcanic eruption" or "flood." You may decide when the 168-hour period begins; however, we will only pay for "earthquake," "volcanic eruption" or "flood" loss or damage that initiates during the policy period. We will also pay for "earthquake," "volcanic eruption" or "flood" loss or damage occurring after the expiration date of this policy if the loss or damage falls within the 168-hour period and initiates during the policy period.

6.  All "named storms" or "hurricanes" and "resultant atmospheric disturbances" that occur within any 72-hour period will constitute a single "named storm," "hurricane" or "resultant atmospheric disturbance." You may decide when the 72-hour period begins; however, we will only pay for "named storm," "hurricane" and "resultant atmospheric disturbance" loss or damage that initiates during the policy period. We will also pay for "named storm" or "hurricane" and "resultant atmospheric disturbance" loss or damage occurring after the expiration date of this policy if the loss or damage falls within the 72-hour period and initiates during the policy period.

## D. COVERED CAUSES OF LOSS

Covered Causes of Loss means risks of direct physical loss to Covered Property, subject to the "terms" of this policy.

## E. PROPERTY NOT COVERED

Covered Property does not include:

1.  Land (including land on which Covered Property is located) or water. But the exclusion for land does not apply to site preparation expenses such as grading, filling or backfilling including the cost of fill dirt. The exclusion for water does not apply to the loss of water contained in any processing equipment, tank, or pipe;

2. Existing buildings or structures to which alterations, additions, improvements or repairs are being made unless specifically endorsed to this policy;

3. Contractor's machinery, tools, equipment and similar property that will not become a permanent part of the building or structure;

4. Contraband or property in the course of illegal transportation or trade;

5. Covered Property left in the open or not contained in buildings or permanent foundations caused by exposure to weather conditions. This does not apply to property designed for outside use or to property in transit;

6. Property while waterborne, except while in transit within intercoastal waterways other than the Florida Keys, in the custody of a carrier for hire; and/or

7. Money, notes, securities.

## F. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

   a. Nuclear Hazard, meaning nuclear reaction or nuclear radiation or radioactive contamination, however caused. But if loss by fire results, we will pay for that resulting loss;

   b. War or military action, meaning;

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

      (3) The discharge of a nuclear weapon even if it is accidental; or

      (4) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

   c. "Delay," loss of market, loss of use, penalties for noncompletion, other than those described in G. COVERAGE EXTENSIONS WITH SUB-LIMITS, 2. Contract Penalty, noncompliance with contract conditions, or consequential loss of any nature;

   d. Criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by you, others who have an interest in the property, others to whom you entrust the property, your partners, officers, directors, trustees, joint adventurers, employees, or agents;

   e. Unexplained disappearance of property and/or shortage found upon taking inventory;

   f. Voluntary parting with any property by you or anyone else to whom you have entrusted the property unless induced to do so by any fraudulent scheme, trick, device or false pretense;

   g. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 5 days or more;

   h. Loss that is covered under any guarantee, warranty or other similarly assumed obligation by any contractor, manufacturer or supplier whether or not the contractor, manufacturer or supplier is an insured under this policy;

Broker

i.   Soil erosion other than as described elsewhere in this policy;

j.   Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria;

k.   (1) Wear and tear;

    (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    (3) Settling, cracking, shrinking or expansion;

    (4) Marring, scratching, derangement, changes in or extremes of temperature, evaporation, loss of weight, leakage of contents, breakage of glass or similar fragile materials, exposure to light, contamination, change in texture or finish;

    (5) Mechanical breakdown including centrifugal force;

l.   Explosion, rupture or bursting of steam boilers, steam or gas turbines, steam pipes, or steam engines;

m.   "Hot testing";

n.   Release, discharge, seepage, migration, dispersal, or escape of "pollutants," except as provided under G. **COVERAGE EXTENSIONS WITH SUB-LIMITS, 6. Pollutant Clean Up and Removal,** of this policy;

o.   Moth, vermin, rodents, termites, or other insects, including their larvae or pupae, nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

p.   "Flood" in any location situated in a Flood Zone prefixed "A" or "V" and/or any 100 Year Flood Plain Area as designated by the Federal Emergency Management Agency; or

q.   "Earthquake" at any location situated in the state of California.

2.   We will not pay for loss or damage caused directly or indirectly by any of the following. But if one of the following excluded causes of loss results in a Covered Cause of Loss, we will pay for the loss caused by that Covered Cause of Loss:

a.   Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

b.   Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

c.   Faulty, inadequate or defective:

    (1) Planning, zoning, development, surveying, site selection and/or site preparation;

    (2) Design, specifications;

    (3) Workmanship, repair, construction, renovation, remodeling, grading, compacting;

    (4) Materials used in repair, construction, renovation or remodeling; or

    (5) Maintenance of part or all of any property wherever located.



## G. COVERAGE EXTENSIONS WITH SUB-LIMITS

### 1. Claim Preparation Expenses

We will pay expenses that you incur or are incurred for your benefit by your representatives, including auditors, accountants, appraisers, lawyers, consultants, architects and/or engineers, in order to arrive at the loss payable under this policy in the event of a claim. This provision does not cover expenses incurred for the services of any public adjuster or broker, including a broker affiliated or subsidiary group. We will not pay more than your representative's standard charges, not to exceed $150.00 per billable hour. The most we pay for all claim preparation expenses in any one loss is the amount specifically stated in the Declarations.

### 2. Contract Penalty

We pay 75% of the cost of contractual penalties for non-completion that you are assessed or are required to pay because you are unable to complete or deliver your work product in a timely manner in accordance with contract terms or conditions. Contractual penalties must result solely from direct physical loss to Covered Property by a Covered Cause of Loss. The most we pay for all contractual penalties in any one loss is the amount specifically stated in the Declarations.

### 3. Debris Removal

We pay the cost to remove debris of Covered Property caused by a Covered Cause of Loss that occurs during the policy period. This includes the cost of demolition of any part of the Covered Property that is no longer useful for its intended purpose as a result of the loss. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

a.  This coverage does not apply to costs to:

   (1)  Extract "pollutants" from land or water; or

   (2)  Remove, restore or replace polluted land or water.

b.  The most we will pay under this coverage is 25% of the amount we will pay for the direct property loss.

But we will not pay more than the amount specifically stated in the Declarations for debris removal in any one occurrence.

### 4. Fire Department Service Charge

We will pay to cover your liability, assumed by contract or agreement prior to the loss or required by local ordinance, for fire department service charges. This Coverage Extension is limited to charges incurred when the fire department is called to save or protect Covered Property from a Covered Cause of Loss. The most we will pay for fire department service charge is the amount specifically stated in the Declarations.

### 5. Ordinance or Law

When a Covered Cause of Loss occurs as a result of physical damage to Covered Property, we cover loss caused by the enforcement of any ordinance, law, or decree that:

a.  Requires the demolition of undamaged parts of Covered Property that is damaged or destroyed by a Covered Cause of Loss;

b.  Regulates the construction or repair of Covered Property, or establishes building, zoning, or land use requirements at the project site described in the Declarations; and

c.  Is in force at the time of loss.



We do not cover the costs associated with the enforcement of any ordinance, law, or decree that requires you or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants." The most we will pay for ordinance or law is the amount specifically stated in the Declarations.

6. **Pollutant Clean Up and Removal**

   We pay your expense to extract "pollutants" from land or water at the job site described in the Declarations if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the covered loss occurs.

   This coverage does not apply to costs of testing, evaluation, observing, or recording the existence, level or effects of "pollutants." But we will pay for testing which is necessary for the extraction of "pollutants" from the land or water.

   The most we will pay for pollutant clean up and removal for each described location is the amount specifically stated in the Declarations for the sum of all covered expenses arising out of a peril not otherwise excluded occurring during each separate 12 month period of this policy.

7. **Service Interruption**

   We pay for loss to Covered Property caused by accidental interruption of steam, gas, water, electricity, sewerage, telecommunications or other service by a Covered Cause of Loss at the location described in the Declarations. We will not cover any loss caused by any deliberate interruption or reduction of any service by you, a service provider or by any public authority. The most we will pay for service interruption is the amount specifically stated in the Declarations.

8. **Temporary Structures**

   We pay for loss to temporary structures meaning scaffolding, construction forms, false work, cribbing and other temporary structures at the project site described in the Declarations. The most we will pay for temporary structures is the amount specifically stated in the Declarations.

9. **Trees, Shrubs, Plants, Lawns**

   We pay for direct physical loss to trees, shrubs, plants and lawns at the project site described in the Declarations and that are a part of your construction, building or fabrication project if they are damaged or destroyed by fire, lightning, explosion, vehicles, vandalism, riot or civil commotion. The most we will pay for trees, shrubs, plants and lawns is the amount specifically stated in the Declarations.

10. **Valuable Papers and Records**

    We pay for the cost to research, replace or restore valuable papers or records (such as plans, drawings, blue-prints, photographs, specifications and data processing media) related to the project described in the Declarations that are lost or damaged due to a Covered Cause of Loss. The most we pay for valuable papers and records is the amount specifically stated in the Declarations.

## H. LOSS CONDITIONS

1. **Abandonment**

   You may not abandon the property to us without our written consent.

2. **Appraisal**

If you and we do not agree on the value of the property or the amount of loss, within 60 days after you receive proof of loss from us, either may make written demand for an appraisal of the loss. In this event, each party will select a competent, impartial appraiser. The two appraisers will then select an umpire. If the two appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. Agreement in writing by any two will determine the amount of loss.

Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Deductible**

All claims for loss or damage arising from one occurrence will be considered one claim and the applicable deductible will be applied to the adjusted amount of the claim.

When expressed as a percentage, the deductible is the stated percentage of the total values at risk at the time of loss. Total values at risk means the total value of property covered calculated in accordance with the provisions of this policy. Values at risk apply per location.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

4. **Definition of Occurrence**

Occurrence means all losses, disasters or casualties that are attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses not excluded by this policy will be treated as one occurrence irrespective of the period of time or area over which such losses occur, except:

a. An "earthquake," "volcanic eruption" or "flood" that occurs within a 168-hour period during the term of this policy will constitute a single occurrence; and/or

b. A "named storm" or "hurricane" and "resultant atmospheric disturbance" that occur within a 72-hour period will constitute a single occurrence.

5. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us or our representative prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) You must take all reasonable steps to protect Covered Property at and after an insured loss to avoid further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance. However, we will only pay for subsequent loss or damage resulting from a peril not otherwise excluded. If feasible, set aside the damaged property in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as reasonably required, allow us to inspect the property proving the loss or damage and examine your books and records. Also allow us to take samples of damaged and undamaged property for inspection, testing and analysis, and allow us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 90 days after our request.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our written consent.

(10) Immediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or suit.

(11) Provide us with a list of all additional insureds involved in the loss. Such loss will be adjusted with you and will be payable to you and the additional insured(s) as your and their interests appear.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**6. Excess Insurance**

You may have excess insurance over the Limits of Insurance stated in this policy. Such excess insurance, if any, will not reduce any liability under this policy.

**7. Insurance Under More Than One Coverage**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**8. Loss Payment**

a. In the event of loss or damage covered by this policy, at our option, we will either:

(1) Pay the value of the loss;

(2) Pay the cost of repairing or replacing the loss;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, to the extent practicable within a reasonable time.

b. We will give notice of our intent to rebuild, repair, or replace within 30 days after we receive the sworn proof of loss.

c.  We adjust all losses with you. Payment will be made to you unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with you or the filing of an appraisal award with us.

d.  Losses to property of others may be adjusted with and paid to you on behalf of the owner of the property, or to the owner of said property. If we pay the owner of said property, we will not pay you. We may also choose to defend any suits arising from the owners at our expense.

## 9.  No Benefit To Bailee

Insurance under this policy will not directly or indirectly benefit anyone having custody of Covered Property, other than you.

## 10. Other Insurance

a.  You may have other insurance subject to the same "terms" as the insurance under this Policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance covering on the same basis.

b.  If there is other insurance covering the same loss or damage, other than that described in a. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## 11. Recoveries

If we pay you for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

a.  You must notify us promptly if you recover property or receive payment;

b.  We must notify you promptly if we recover property or receive payment;

c.  Any recovery expenses incurred by either are reimbursed first;

d.  You may keep the recovered property but you must refund to us the amount of the claim paid, or any lesser amount to which we agree; and

e.  If the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between you and us based on our respective interest in the loss.

## 12. Valuation

a.  The value of Covered Property is the cost to repair, rebuild or replace the damaged or destroyed property. We will not pay more than the least of the following amounts:

(1) The Limit of Insurance that applies to the damaged or destroyed property;

(2) The cost to repair or replace with similar materials on the same site and used for the same purpose; or

(3) The amount you actually spend to repair or replace the damaged or destroyed property. In the event of loss, the value of property will be determined as of the time of loss.

This provision does not apply to paragraph b. below.

b.  The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## I. GENERAL CONDITIONS

### 1. Assignment

This policy may not be assigned without our written consent.

### 2. Cancellation

a. You may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. If we cancel this policy for nonpayment of premium, we will give you notice at least 10 days before the cancellation is effective. If we cancel this policy for any other reason, we will give you notice at least 30 days in advance of cancellation.

c. We will mail or deliver our notice to your last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

### 3. Change, Modification, or Waiver of Policy Terms

A waiver or change of the "terms" of this policy must be issued by us in writing to be valid.

### 4. Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it relates to this Coverage at any time. It is also void if you or any other Insured, at any time, intentionally conceals or misrepresents a material fact concerning this policy, the Covered Property, your interest in the Covered Property, or a claim under this policy.

### 5. Examination of Books and Records

We may examine and audit your books and records that relate to this policy during the policy period and within three years after the policy has expired.

### 6. Final Adjustment

After the project is completed, you will report to us the actual "intended contract price" of the project shown in the Declarations. If this amount is more than the actual "intended contract price" as stated in the Declarations, you will pay us an additional premium on the amount in excess of that shown in the Declarations.

### 7. Inspections

We have the right, but are not obligated, to inspect your property and operations at any time. This inspection may be made by us or may be made on our behalf. An inspection or its resulting advice or report does not warrant that your property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for our benefit only.

### 8. Legal Action Against Us

No one may bring a legal action against us under this policy unless:

Broker

a. There has been full compliance with all the "terms" of this policy; and

b. The action is brought within 12 months after you first have knowledge of the direct loss or damage.

9. **Occupancy**

The project shown in the Declarations may not be occupied without obtaining our consent. Our consent includes endorsing the policy with an applicable rate adjustment.

10. **Premiums**

The first Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

11. **Reinstatement of Limit After Loss**

The Limits of Insurance will not be reduced by the payment of any claim, except as is listed for "earthquake" and "flood" under Limits of Insurance in this policy. Following an "earthquake" or "flood" loss, we have the option of reinstating the Limits of Insurance listed in the Declarations for "earthquake" or "flood," for an additional premium.

12. **Released Bill of Lading**

You may accept bills of lading or shipping receipts issued by carriers that limit their liability to less than the actual value of the property.

13. **Transfer of Rights of Recovery Against Others To Us**

a. If we pay for a loss, we may require you to assign to us your right of recovery against others. You must do all that is necessary to secure our rights. We do not pay for a loss if you impair this right to recover.

b. If you and we pursue claims against the party responsible for the loss, any recovery shall be divided among us in proportion to our respective interests.

c. Contracts or agreements impairing rights of recovery against others to us.

(1) If you enter into a contract or agreement that contains any provision (including but not limited to, a disclaimer of liability, limitation of liability, and/or waiver of rights of recovery), other than a "standard construction contract," that may impair your ability to recover for damage to insured property, you must notify us, and provide us with a copy of the contract or agreement prior to a loss under this provision. We may then charge an additional premium in order for coverage to continue.

(2) If you do not provide a copy of the contract or agreement, referred to in (1) above, this policy will not cover any loss to which the contract or agreement applies.

## J. DEFINITIONS

1. "Delay" means a delay in the construction, building, or fabrication of Covered Property.

2. "Earthquake" means any shaking or trembling of the crust of the earth caused by underground seismic forces, or by breaking and shifting of rocks beneath the surface. For purposes of this policy, "earthquake" includes resultant landslide.

3. "Flood" means rising water, unusual and rapid accumulation or runoff of surface water, tidal water or rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water, whether driven by wind or not and spray from any of these, mudslides which are caused or precipitated by accumulations of water on or under the ground, water that backs up through a sewer or drain, and water that exerts pressure on or flows, seeps, or leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.



4.  "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

5.  "Hot Testing" means the checking of the component parts of equipment or machinery under load or operational conditions, and includes the:

   a.  Firing of furnaces or any application of direct or indirect heat;

   b.  Use of feedstock or other materials for processing or other means to simulate working conditions; or

   c.  Connection of electrical generating, transforming, converting, or rectifying equipment to a power grid or other load circuit for the purposes of checking the equipment or machinery.

6.  "Intended Contract Price" means 100% of the total contract value of the project shown in the Declarations, less 100% of the contract value of those items that are a part of the project shown in the Declarations, but not covered under this policy.

7.  "Named Storm" or "Hurricane" and "Resultant Atmospheric Disturbance" means a storm system designated and named by the National Weather Service, including, but not limited to wind, wind driven rain, tornadic activity, hail, "flood," and wave wash/storm surge.

8.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. It also includes any material which after its release, dispersal or discharge, can cause or threaten damage to human health and/or human welfare, or causes or threatens damage, deterioration, loss of value, marketability and/or loss of use, to insured property; including, but not limited to bacteria, fungi, mold, mildew, virus, or hazardous substances as listed in the Federal Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976 and/or Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency.

9.  "Standard Construction Contract" means an AIA contract or similar boiler plate contract.

10. "Terms" means all provisions, limitations, exclusions, conditions and definitions that apply.

11. "Volcanic Eruption" means the expulsion, as a result of natural causes, of molten rock, rock fragments, gases, ashes, mud, lava flows, and other natural substances through an opening in the crust of the earth.

Policy Number: RBR0021513                                    RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUILDER'S RISK LOSS OF INCOME COVERAGE

### SCHEDULE

| Covered Income Limits of Insurance | Per Occurrence | Per Month |
|---|---|---|
| Business Income and Rental Income | $ 500,000 | $Not Applicable |
| Business Income | $ | $ |
| Rental Income | $ | $ |

If Limits of Insurance are shown under more than one of the above options, the provisions of this endorsement apply separately to each.

**Deductible Period:   3   Days**

A.  Covered Income, as used in this Coverage Extension, means the following type(s) of income for which a Limit of Insurance is shown in the Schedule:

   1.  Business Income, meaning the:

      a.  Net income, other than rental income, (net profit or loss before income taxes) that would have been earned or incurred; and

      b.  Continuing normal operating expenses incurred, other than expenses incurred in your rental operations.

   2.  Rental Income, meaning the:

      a.  Net rental income (net profit or loss before taxes) that would have been earned or incurred; and

      b.  Continuing normal expenses incurred in your rental operations.

B.  The insurance provided by this policy is extended as follows:

   1.  We will pay for the actual loss of Covered Income you sustain due to a "delay" in the completion of the project described in the Declarations. The "delay" must be caused by direct physical loss to Covered Property caused by or resulting from a Covered Cause of Loss to Covered Property.

      This coverage applies to the loss of Covered Income which you sustain during the period of time that:

      a.  Begins on the date the described project would have been completed had there been no loss to Covered Property caused by or resulting from a Covered Cause of Loss; and

      b.  Ends on the date:

         (1)  When the damaged Covered Property should have been rebuilt, repaired or replaced with reasonable speed and similar quality; or

RBR 302 (09/02)                                              Page 1 of 3

Broker

(2)  The project is completed;

whichever is earlier.

2.  We will also pay for the actual loss of Covered Income you sustain due to a "delay" in the completion of the described project because access to the job site described in the Declarations is specifically denied by an order of civil authority. This order must be a result of direct physical damage to property other than at the job site described in the Declarations and caused by a Covered Cause of Loss.

   a.  This coverage will apply for a period of up to 14 days from the date the described project would have been completed had there been no civil authority action prohibiting access to the described job site.

   b.  No deductible applies to item B.2.

3.  The period of time provided will not be limited by the expiration date of this insurance.

C.  In addition to the conditions of the Builder's Risk Coverage Form, the following apply:

1.  We will not pay for loss of Covered Income in any one occurrence under this coverage until the "delay" in the completion of the described project exceeds the Deductible Period shown in the Schedule;

2.  You must do everything reasonably possible to minimize loss of Covered Income; and

3.  You must minimize any interference with any construction schedule to avoid or reduce any resulting "delay." You must also allow us access to the Covered Property and Covered Income so we may:

   a.  Negotiate with the contractors, sub-contractors, manufacturers, suppliers, or other involved parties;

   b.  Establish the cause and extent of the loss to Covered Property and Covered Income; and/or

   c.  Determine and suggest methods to minimize or avoid the "delay" in construction, repairing, remodeling, or renovation.

D.  All of the exclusions in section F. of the Builder's Risk Coverage Form apply to this Extension. In addition, we will not pay under this Extension for any increase of loss of income caused by or resulting from:

1.  The enforcement of any ordinance or law that:

   a.  Regulates the construction, use or repair, or requires the tearing down of any property; or

   b.  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants";

2.  Interference by strikers or other persons, including interference with repairing or replacing the Covered Property or with resuming construction of the Covered Property;

3.  The suspension, lapse or cancellation of any license, lease, contract or order.

But if the suspension, lapse or cancellation is directly caused by the "delay" in the completion of the described project, we will cover such loss that affects your Covered Income during the period of time that coverage under this Extension applies;

4.  Any additional time required to repair or replace any part of a covered building or structure due to:

   a.  Adverse weather conditions; or

RBR 302 (09/02)                                                      Page 2 of 3

Broker

    b.  Improvements necessary to correct deficiencies of original construction, building or fabrication; or

5.  Any increase in loss resulting from any other consequential loss; and/or

6.  Expenses that are not necessary during construction of the Covered Property and exceed the amount by which a loss is reduced.

E.  The most we will pay for all loss of Covered Income in any one occurrence under this Extension is the applicable Per Occurrence Limit of Insurance shown in the Schedule.

But we will not pay more for your loss of Covered Income in each 30 consecutive day period after the project should have been completed than the applicable Per Month Limit of Insurance shown in the Schedule.

F.  The amount of Covered Income loss under this Extension will be determined based on:

1.  Your net income before the "delay" in the completion of the described project;

2.  Your likely net income had there been no "delay" in the completion of the described project;

3.  The necessary operating expenses that continue during the "delay" in the completion of the described project;

4.  All necessary expenses that reduce the Covered Income loss that would have been incurred, but only to the extent that the loss is reduced; and

5.  Other relevant sources of information, including:

    a.  Your financial records and accounting procedures;

    b.  Bills, invoices and other vouchers; and

    c.  Deeds, liens or contracts.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: RBR0021513                                    RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA MUNICIPAL PROJECTS ENDORSEMENT

This form only applies to municipal projects subject to California Code 7105.

A.  We will not pay more under this policy than the lessor of:

   1.  5% of the Contract Amount for loss or damage from "earthquake" measuring in excess of 3.5 on the Richter Scale
       and tidal waves; or

   2.  $ 1,000,000         at any one location for loss or damage resulting from "earthquake" or "volcanic eruption." In
       addition, we will not pay more than $ 1,000,000      in any one "earthquake" or "volcanic eruption" loss or
       disaster, or $ 1,000,000        per occurrence and in the aggregate for all locations combined in any single
       one year period or policy period, whichever is less.

B.  2.5 % of the total values at risk at the time of loss will be deducted from each adjusted "earthquake" or "volcanic
    eruption" claim. $50,000        will be the minimum amount deducted.

C.  You must inform us in writing of any projects that are not subject to the provisions of California Code 7105. These
    projects will be separately scheduled and the provisions of RBR 327 CALIFORNIA EARTHQUAKE ENDORSEMENT
    will apply.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

RBR 306 (09/02)                                                         Page 1 of 1

Broker

Policy Number: RBR0021513                                          RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOFT COSTS/EXTRA EXPENSE ENDORSEMENT

When made a part of this policy, this endorsement changes the definition of Covered Property to include coverage for Soft Costs and/or Extra Expense.

## A.  COVERAGE

Coverage only applies for Soft Costs and/or Extra Expense if a Limit of Insurance is shown in the Declarations. If no limit is shown, the coverage does not apply. If Limits of Insurance are shown under more than one of the following options, the provisions of this Coverage Part apply separately to each. The most we will pay for soft costs and/or extra expense is the amount specifically stated in the Declarations.

1.  We pay for soft cost expenses that arise out of a "delay" caused by a covered peril. The "delay" must be caused by direct physical loss to Covered Property caused by or resulting from a Covered Cause of Loss to Covered Property. Soft cost expenses means the necessary expenses, described below, relating to the construction, building, or fabrication of covered property that are over and above those costs which would have been incurred had there been no delay. These costs consist of:

    a.  Additional interest payments on money borrowed to finance construction, remodeling, renovation, or repair;

    b.  Additional realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

    c.  Additional fees for accountants and attorneys;

    d.  Additional advertising, public relations, and promotional expenses;

    e.  Additional fees for architects, interior designers, consultants and other tech advisors, and engineers;

    f.  Additional cost of insurance premiums necessary to renew or extend insurance coverage;

    g.  The additional cost to extend leases for construction equipment and temporary office space; and/or

    h.  Expediting expenses, meaning additional labor or overtime, transportation costs, storage expense, and the expense to rent additional equipment.

2.  We pay extra expense that arises out of a "delay," or prevention of a "delay" in the completion of the project described in the Declarations. The "delay" must be caused by direct physical loss to Covered Property caused by or resulting from a Covered Cause of Loss to Covered Property. This means:

    a.  The necessary extra expenses that are incurred to resume or continue construction of a covered building or structure as nearly as practicable;

    b.  The extra expenses necessary during construction of a covered building or structure;

    c.  Extra expenses to repair, replace, or restore any property, and/or

    d.  Extra expenses to research, replace, or restore information on damaged documents, manuscripts, or records that are inscribed, printed, or written, or exist on electronic or magnetic media.

    Items (c) and (d) are covered only to the extent that they reduce loss otherwise payable under this policy.

B. **EXCLUSIONS**

The following Exclusions are in addition to, and not in place of, those shown in the policy. We will not pay for:

1. Any increase in expense or loss resulting from additional time required to repair or replace any part of a covered building or structure due to:

   a. Adverse weather conditions;

   b. Improvements necessary to correct deficiencies of original construction, erection or fabrication;

   c. Requires you to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants"; or

   d. Except as provided under Coverage Extension, ordinances or laws requiring the use of construction materials or equipment that are different from the property that is destroyed;

2. Any increase in expense or loss due to interference by strikers or other persons, including interference with repairing or replacing the Covered Property or with resuming construction of the Covered Property;

3. Any increase in expense or loss due to the suspension, lapse or cancellation of licenses, leases, contracts or orders. But if the suspension, lapse or cancellation is directly caused by the "delay" in the completion of the described project, we will cover such loss that affects your Soft Costs or Extra Expense during the period of time that coverage under this Extension applies;

4. Any increase in expense or loss resulting from any other consequential loss;

5. Expenses that are not necessary during construction of the Covered Property and exceed the amount by which a loss is reduced; and

6. Expenses to put out a fire, except as provided in the Builders Risk Policy.

C. **COVERAGE EXTENSION**

We extend your coverage for expenses or losses to include loss while access to the job site described in the Declarations is specifically denied by an order of civil authority. This order must be a result of direct physical damage to property other than at the job site described in the Declarations and caused by a Covered Cause of Loss. his extension is limited to two consecutive weeks from the date of the order, and does not increase the Limit of Insurance.

D. **LOSS CONDITIONS**

The following Conditions are in addition to, and not in place of, those shown in the policy:

1. We only pay for soft costs and/or extra expense during the period of time that would be required with due diligence and dispatch to rebuild or restore the damaged building or structure with materials of like kind and quality. You must do everything reasonably possible to minimize soft cost expenses and/or extra expenses.

2. You must minimize any interference with the construction schedule to avoid or reduce any resulting "delay." You must also allow us access to the covered building or structure so that we can negotiate with the contractors, subcontractors, manufacturers, suppliers, or other involved parties to:

   a. Establish the cause and extent of the loss to the covered building or structure;

   b. Establish the amount of soft cost expenses and/or loss of rental income; and

   c. Determine and suggest methods to minimize or avoid the "delay" in construction, repairing, remodeling, or renovation.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: RBR0021513                                              RLI Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARTHQUAKE EXCLUSION

"Earthquake" coverage does not extend to Covered Property while Covered Property is located in the following areas:

All locations other than the state of California.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

RBR 325 (09/02)

Broker

Policy Number: RBR0021513                                      RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGE ENDORSEMENT

| | | | | | |
|---|---|---|---|---|---|
| ENDORSEMENT EFFECTIVE DATE: 05/06/2005 | (12:01 a.m.) | ☒ ADDITIONAL PREMIUM | $ 65,410. |
| ENDORSEMENT NUMBER: 1 | | ☐ RETURN PREMIUM | $ |
| INSURED NAME: | | ☐ NIL | $ |
| Shimmick Construction Co., Inc. | | ☐ | $ |
| | | ☐ | $ |
| | | ☐ | $ |
| | | TOTAL | $ 65,410. |

IT IS UNDERSTOOD AND AGREED THAT:

| | | |
|---|---|---|
| ☐ 1. PREMIUM | ☒ 7. COVERAGE | ☐ 13. COVERAGE IS CANCELLED |
| | | ☐ SHORT RATE |
| ☐ 2. DEPOSIT PREMIUM | ☐ 8. INCEPTION DATE | ☐ PRO RATE |
| | | ☐ MINIMUM PREMIUM APPLIES |
| ☐ 3. MINIMUM PREMIUM | ☐ 9. EXPIRATION DATE | |
| ☐ 4. RATE | ☐ 10. TERMS | ☐ 14. ADDITIONAL INSURED BUT ONLY |
| | | AS RESPECTS THE OPERATIONS |
| ☐ 5. INSTALLMENT | ☐ 11. NAME OF INSURED | OF THE NAMED INSURED |
| ☐ 6. AUDIT | ☐ 12. ADDRESS OF INSURED | |
| ☐ IS CHARGED FOR THE PERIOD: | ☒ IS AMENDED TO READ AS FOLLOWS: | |

The attached projects are made part of this policy:

Lenzen Yard Mainline Relocation & Tunnel; Completed Value $11,650,000.; Term Premium $3,996.

The Bradshaw Interceptor Sewer; Completed Value $18,253,520.; Term Premium $21,492.

Illinois Street Intermodal Bridge; Completed Value $17,750,000.; Term Premium $39,922.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

BY: _Susan M. O'Dell_

DATE OF ISSUE:  SC 10/20/2005

CPR 2100 (11/95)                    Broker                         Page 1 of 1

 

Policy Number: RBR0021513

RLI Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROJECT ENDORSEMENT

The following project is now made a part of this policy, and is subject to all its terms and conditions:

**Project Name:** The Bradshaw Interceptor Sewer, Section 6A (BR6A)

**Project Location:** Northest area of Sacramento County, CA

**Description:** Laying approximately 3 miles of sewer pipeline. Project is the link to the Sacramento Regional county Sanitation District Wastewater Conveyance System. This project is a portion of the larger Bradshaw/Folsom Interceptor pipeline that will convey wastewater flows from the northeast area of Sacramento County, including Folsom, to the Sacramento Regional Wastewater Treatment Plant near Elk Grove.

**Construction Type:** Pipeline

**Original Project Term:** 03/09/2005 through 05/06/2005
**Coverage Provided Under This Policy:** 05/06/2005 through 03/09/2006

**Completed Value:** $18,253,520.

**Rate – All Risk:** $0.06  Per $100
**Rate – Earthquake 7105:** $0.07 Per $100
**Rate – Flood-Non Zone A or V:** $0.01 Per $100

**Total Annual Rate:** $0.14 Per $100
**Prorate:** .841

**Project Term Premium:** $21,492.

At no time will we pay more than the amount shown in the Declarations under Per Occurrence Loss Limit for a loss due to a single occurrence or event for any and all projects insured under this policy. All sub-limits in the Declarations apply to this project. Sub-limits are a part of, and not in addition to, this Per Occurrence Loss Limit, and apply on a per occurrence basis.

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

MAN-CNS-3028(11/05)

Broker

Page 1 of 1

**EXHIBIT B**

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| George D. Yaron (State Bar #96246)<br>Henry M. Su (State Bar #171853)<br>Yaron & Associates<br>601 California Street, 21st Floor<br>San Francisco, CA 94108<br>TELEPHONE NO.: 415-658-2929    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff Shimmick Construction Company, Inc. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

PLAINTIFF/PETITIONER: Shimmick Construction Company, Inc.

DEFENDANT/RESPONDENT: RLI Insurance Company

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>RG08378315 |
|---|---|

TO *(insert name of party being served):* Defendant RLI Insurance Company

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: March 25, 2008

Henry M. Su
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [ ] Other *(specify):*

*(To be completed by recipient):*

Date this form is signed:

April 14, 2008
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

Carlson Calladine & Peterson

By: Donald W. Carlson

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Counsel for RLI INSURANCE CO.

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

# MESSAGE CONFIRMATION

```
                                        04/14/2008  12:59
                                        ID=CARLSON CALLADINE PETERSON LLP


 DATE        S,R-TIME   DISTANT STATION ID      MODE      PAGES  RESULT              S.C.
 04/14       00'50"     4156582930              TX        002    OK                  0000
```

04/14/2008    12:58    CARLSON CALLADINE PETERSON LLP → 6582930              NO.336    P001

---

## CARLSON, CALLADINE & PETERSON LLP                    *Offices in San Francisco and Los Angeles*
353 SACRAMENTO STREET • 16TH FLOOR • SAN FRANCISCO, CALIFORNIA 94111 • TEL: 415.391.3911 • FAX: 415.391.3898 • WWW.CCPLAW.COM

*OUR FILE NO.: 5625-18*

### FACSIMILE TRANSMITTAL

**TO:**                                           **FAX NUMBER:**

George D. Yaron                                    (415) 658-2930
Henry Su
Yaron & Associates

**FROM:**   Margie Jones (for Donald W. Carlson)

**DATE:**   April 14, 2008

**RE:**     Shimmick Construction

Original will follow by mail.

This facsimile is 2 pages, including this Cover Sheet. If a problem occurs with this transmission, please contact our Receptionist at (415) 391-3911.

**MESSAGE: ATTACHED, SIGNED-APRIL 14, 2008, NOTICE AND ACKNOWLEDGMENT OF RECEIPT.**

### CONFIDENTIAL
This facsimile transmission contains confidential information that may also be privileged. Unless you are the addressee named above (or authorized to receive for the addressee), you may not read, copy, use, or distribute the documents transmitted herewith. If you have received this facsimile transmission in error, please advise Carlson, Calladine & Peterson immediately by telephone or fax and return it promptly via the U. S. Postal Service. We will reimburse any costs you incur. Our telephone number, fax number and address are set forth above.

**EXHIBIT C**

ENDORSED
FILED
ALAMEDA COURT

2008 APR 25  PH 1: 02

CLERK OF THE SUPERIOR COURT
BY ALPHONSINE OATES

1  DONALD W. CARLSON  [Bar No. 79258]
2  JOYCE C. WANG  [Bar No.: 121139]
   NANCY J. STROUT  [Bar No.: 121096]
3  CARLSON, CALLADINE & PETERSON LLP
   353 Sacramento Street, 16th Floor
4  San Francisco, California 94111
   Telephone:    (415) 391-3911
5  Facsimile:    (415) 391-3898

6  Attorneys for Defendant
   RLI INSURANCE COMPANY

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10

11  SHIMMICK CONSTRUCTION COMPANY,   )   CASE NO.:   RGO 8378315
    INC., a corporation,              )
12                                    )   ANSWER OF DEFENDANT
                Plaintiff,            )   RLI INSURANCE COMPANY
13                                    )   TO COMPLAINT
         vs.                          )
14                                    )
    RLI INSURANCE COMPANY, a          )
15  corporation, and DOES 1 through 100, )
                                      )       BY FAX
16              Defendants.           )
                                      )
17                                    )

18       Defendant RLI Insurance Company ("Defendant"), answers the unverified complaint

19  ("Complaint") of plaintiff Shimmick Construction Company ("Plaintiff") as follows:

20                      ANSWER TO ALL CAUSES OF ACTION

21       Pursuant to California Code of Civil Procedure §431.30(d), Defendant denies, generally

22  and specifically, each and every allegation contained in the Complaint, and further denies that

23  Plaintiff has been damaged in any amount whatsoever as a result of any acts, omissions, or breach

24  on the part of answering Defendant.

25                          AFFIRMATIVE DEFENSES

26       As separate and affirmative defenses to the Complaint, Defendant alleges:

27

28

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET,
SUITE 1600
San Francisco, CA  94111

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to constitute claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Defendants.

### SECOND AFFIRMATIVE DEFENSE

Third party individuals and/or entities have made payments to Plaintiff for the loss Plaintiff claims under the insurance policy issued by Defendant. Accordingly, Defendant is entitled to an offset for amounts Plaintiff has received from such third parties.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state facts sufficient to support the recovery of punitive or exemplary damages against Defendant.

### FOURTH AFFIRMATIVE DEFENSE

California Civil Code Section 3294, under which Plaintiff's claim for punitive or exemplary damages is apparently made, if applicable in this action, is invalid on its face, or as applied to this Defendant, pursuant to Article I, Section 10, Article IV, Section 2, and the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, Article I, Sections 2, 7, 9, 15 and 17, and Article IV, Section 16 of the California Constitution and does not meet the test for allowing punitive damages as set forth in case law.

**WHEREFORE**, Defendant prays for judgment as follows:

1. That Plaintiff takes nothing by way of its Complaint, and that judgment be entered in favor of Defendant;

2. For costs of suit herein; and

3. For such other and further relief as the Court deems just and proper.

DATED: April 25, 2008

CARLSON, CALLADINE & PETERSON LLP

By _____
JOYCE C. WANG
Attorneys for Defendant RLI INSURANCE
COMPANY

CARLSON CALLADINE & PETERSON LLP
333 SACRAMENTO STREET,
SUITE 1600
San Francisco, CA  94111

## PROOF OF SERVICE BY MAIL
(Code of Civil Procedure §§ 1013a(3) & 2015.5)

*Shimmick Construction Company v. RLI Insurance Company*
Alameda County Superior Court No. RGO8378315

I, the undersigned, declare that I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is CARLSON, CALLADINE & PETERSON LLP, 353 Sacramento Street, 16th Floor, San Francisco, California 94111.

On April 25, 2008, I served the attached:

**ANSWER OF DEFENDANT RLI INSURANCE COMPANY TO COMPLAINT**

on the person(s) named below in said cause, by placing a true copy thereof enclosed in an envelope with postage prepaid fully thereon. Said envelope(s) were thereafter deposited with the United States Postal Service at San Francisco, California, in accordance with this firm's business practice for collection and processing correspondence for mailing, with which I am personally and readily familiar. All correspondence is deposited with the United States Postal Service on the same day in the ordinary course of business. Said envelope(s) were addressed as follows:

George D. Yaron, Esq.
Henry Su, Esq.
Yaron & Associates
601 California Street, Floor 21
San Francisco, CA  94108-2826
Facsimile:  (415) 658-2930

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at San Francisco, California, on April 25, 2008.

_Margie Jones_
Margie Jones

**ANSWER OF DEFENDANT RLI INSURANCE COMPANY TO COMPLAINT**
**CASE NO.: RGO 8378315**